UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| BRADLEY MAGRINO,<br>　　　*Plaintiff*,<br><br>　　　v.<br><br>YONKERS CONTRACTING COMPANY,<br>INC.,<br>　　　*Defendant*. | No. 3:24-cv-00769-(VAB) |

**RULING AND ORDER ON MOTION FOR SUMMARY JUDGMENT**

In this employment action, Bradley Magrino ("Bradley Magrino" or "Plaintiff") alleges

that Yonkers Contracting Company, Inc. ("Yonkers Contracting" or "Defendant") violated Conn.

Gen. Stat. § 31-51q by terminating his employment after he raised concerns about the safety of a

traffic-control setup during a lane closure on an I-95 job site on August 25, 2022.

Yonkers Contracting now moves for summary judgment on Bradley Magrino's sole

claim. Memorandum of Law in Support of Motion for Summary Judgment, ECF No. 24-1

("Def.'s Mem.").

For the reasons that follow, Yonkers Contracting Company, Inc.'s motion for summary

judgment as to Bradley Magrino's claim under Conn. Gen. Stat. § 31-51q is **GRANTED.**

**I. FACTUAL AND PROCEDURAL HISTORY**

　　**A. Factual Background[1]**

---

[1] For purposes of the pending motion, the Court will take the following facts, drawn from Yonkers Contracting's Local Rule 56(a)(1) Statement, as true.

On July 25, 2022, Yonkers Contracting Company, Inc. hired Mr. Magrino to work on an I-95 project in Westport, Connecticut, and, after completing traffic-control training and moving to the night shift, he assisted Yonkers Contracting's Traffic Control Supervisor, German Ruiz, in implementing the worksite traffic-control plan in compliance with Department of Transportation regulations. Yonkers Contracting's Local Rule 56(a)(1) Statement ¶¶ 15, 18–24, ECF No. 24-2.

On August 25, 2022, while overseeing a lane closure where I-95 intersects with Route 7, Mr. Magrino told Ruiz that he was uncomfortable with the use of a crash truck during the traffic-control setup; he then left the job site with a colleague to call Dori Mustafaj and discuss the issue. *Id.* ¶¶ 25, 27, 29–33.

The next day, Michael Lloyd was informed that Mr. Magrino had left the crew short-staffed, Lloyd spoke with Mr. Magrino about his discomfort working on the highway and whether the role was the right fit, and Mr. Magrino's employment then ended. *Id.* ¶¶ 34–38.

Yonkers Contracting's Rule 56(a)(1) Statement further provides that this was the first time Bradley Magrino had raised concerns about the job site and that he did not report any concerns through Yonkers Contracting's compliance hotline, human resources, chief compliance officer, or any external channel. *Id.* ¶¶ 39–40.

**B. Procedural History**

On April 25, 2024, Yonkers Contracting Company, Inc. removed this action to this Court. Notice of Removal, ECF No. 1.

On May 31, 2024, Yonkers Contracting Company, Inc. filed its Answer. Answer, ECF No. 18.

On June 3, 2024, the Court entered a Scheduling Order setting June 6, 2025, as the deadline for dispositive motions. Scheduling Order, ECF No. 19.

On June 6, 2025, Yonkers Contracting Company, Inc. moved for summary judgment and filed a memorandum in support, a statement of material facts, and Exhibits A through D. Mot. for Summ. J., ECF No. 24; Mem. in Supp., ECF No. 24-1; Statement of Material Facts, ECF No. 24-2; Ex. A-D, ECF No. 24-3.

On June 26, 2025, Bradley Magrino moved for an extension of time to respond to the motion for summary judgment. Mot. for Extension of Time, ECF No. 25.

On June 27, 2025, the Court granted that motion and extended Bradley Magrino's deadline to respond until July 26, 2025. Order, ECF No. 26.

## II. STANDARD OF REVIEW

A court will grant a motion for summary judgment if the record shows no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ("Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."). The non-moving party may defeat the motion by producing sufficient evidence to establish that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48.

"[T]he substantive law will identify which facts are material." *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*; *see Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) ("[M]ateriality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." (citing *Anderson*, 477 U.S. at 248)).

"The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250. When a motion for summary judgment is supported by documentary evidence and sworn affidavits and "demonstrates the absence of a genuine issue of material fact," the non-moving party must do more than vaguely assert the existence of some unspecified disputed material facts or "rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (internal quotation marks omitted).

The party opposing the motion for summary judgment "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.* (internal quotation marks omitted). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 250 (citing *Dombrowski v. Eastland*, 387 U.S. 82, 87 (1967) and *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)).

A court must view any inferences drawn from the facts in the light most favorable to the party opposing the summary judgment motion. *See Dufort v. City of New York*, 874 F.3d 338, 343, 347 (2d Cir. 2017) ("On a motion for summary judgment, the court must 'resolve all

ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought.'"). A court will not draw an inference of a genuine dispute of material fact from conclusory allegations or denials, *see Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011), and will grant summary judgment only "if, under the governing law, there can be but one reasonable conclusion as to the verdict," *Anderson*, 477 U.S. at 250.

## III. DISCUSSION

Conn. Gen. Stat. § 31-51q prohibits an employer from subjecting an employee to discipline or discharge on account of the exercise of rights guaranteed by the First Amendment to the United States Constitution or sections 3, 4, or 14 of article first of the Connecticut Constitution, provided that the employee's activity does not substantially or materially interfere with the employee's bona fide job performance or the working relationship between the employee and the employer. *See* Conn. Gen. Stat. § 31-51q (providing that an employer is liable for disciplining or discharging an employee on account of "the exercise by such employee of rights guaranteed by the [F]irst [A]mendment to the United States Constitution or section 3, 4 or 14 of article first of the Constitution of the state," provided that such activity "does not substantially or materially interfere with the employee's bona fide job performance or the working relationship between the employee and the employer").

To prevail on a claim under § 31-51q, a plaintiff therefore must show that he engaged in protected speech, that the speech was causally linked to an adverse employment action, and that the protected activity did not interfere with the central purposes of the employment relationship. *Trusz v. UBS Realty Invs., LLC*, No. 3:09-CV-00268 (JAM), 2016 WL 1559563, at *8 (D. Conn. Apr. 18, 2016) (stating that "[t]o prevail on a claim for retaliation under § 31-51q, a plaintiff

must show that (1) he engaged in protected speech that was (2) causally linked to (3) an adverse employment action he suffered, and (4) that the protected activity did not interfere with the central purposes of the employment relationship").

Mr. Magrino's sole claim arises under Conn. Gen. Stat. § 31-51q.  Although he asserts only one claim, that claim presents several issues, including whether his statements were protected under the First Amendment or the Connecticut Constitution, which require analysis of both rights guaranteed by both the First Amendment and article first, §§ 3, 4, and 14 of the Connecticut Constitution, and whether his conduct substantially or materially interfered with the employment relationship.

The Court will address each issue in turn.

**A. The Protected Speech in the Workplace Analysis**

The First Amendment does not allow employees to "constitutionalize the employee grievance," and speech that "owes its existence to a[n] [] employee's professional responsibilities" is not protected. *Garcetti v. Ceballos*, 547 U.S. 410, 420-22, 424 (2006) (stating that the First Amendment does not "constitutionalize the employee grievance" and that speech that "owes its existence to a[n] [] employee's professional responsibilities" is not protected). And the *Garcetti* rule applies to § 31-51q claims. *Schumann v. Dianon Sys., Inc.*, 304 Conn. 585, 610-11 (2012) (stating that "the rule in *Garcetti v. Ceballos*, supra, 547 U.S. 410, applies to claims under § 31-51q grounded in the first amendment that are brought against private employers").

In making this determination, "[t]he speech need not be contemplated by the employee's formal job description . . . [o]n-the-job speech generally is pursuant to an employee's duties when it is part-and-parcel of his concern about his ability to properly execute his duties." *Id.* at 614 (stating that "[t]he speech need not be contemplated by the employee's formal job

6

description . . . [o]n-the-job speech generally is pursuant to an employee's duties when it is part-and-parcel of his concern about his ability to properly execute his duties").

Under the Connecticut Constitution, job-related speech is protected only when it involves a matter of public concern and implicates "official dishonesty . . . other serious wrongdoing, or threats to health and safety." *Trusz v. UBS Realty Invs., LLC*, 319 Conn. 175, 212 (2015) (stating that "if an employee's job-related speech reflects a mere policy difference with the employer, it is not protected" and that only speech implicating "official dishonesty . . . other serious wrongdoing, or threats to health and safety" is protected). The Connecticut Supreme Court also explained that, to warrant protection in this context, the speech must concern "a matter of unusual importance." *Id.* at 204, 210-11 (stating that the speech must concern "a matter of unusual importance").

Whether speech addresses a matter of public concern depends on its "content, form, and context." *DiMartino v. Richens*, 263 Conn. 639, 667 (2003) (stating that whether speech addresses a matter of public concern is determined by "the content, form, and context" of the speech). Connecticut courts have cautioned that § 31-51q "should not be construed so as to transform every dispute about working conditions into a constitutional question." *Cotto v. United Techs. Corp.*, 251 Conn. 1, 17 (1999) (stating that § 31-51q "should not be construed so as to transform every dispute about working conditions into a constitutional question").

Yonkers Contracting argues that summary judgment should enter in its favor because Bradley Magrino did not engage in speech protected by either the First Amendment or the Connecticut Constitution, because his statements were made in the course of performing his work duties and reflected only an internal workplace disagreement. Def.'s Mem. in Supp., ECF No. 24-1, at 7-14 (arguing that Plaintiff "spoke on a purely personal workplace matter," and did

7

not engage in speech protected by "the First Amendment or an Equivalent Provision of the Connecticut Constitution").

The Court agrees.

On this record, Mr. Magrino's statements arose directly from his assigned traffic-control duties on the night of August 25, 2022. Ex. D, Magrino Dep. 45:16-18, 52:5-9, ECF No. 24-3 at 30, 32; Ex. A, Ruiz Aff. ¶¶ 12, 14, ECF No. 24-3 at 4 (testifying that, on the night shift, Bradely Magrino was "responsible for being in compliance with DOT for how the traffic pattern was set up and taken down," that his August 25, 2022 assignment was "the biggest lane closure" where "I-95 intersects with where the exit is for Route 7," and stating that, during that lane closure, he stopped to raise concerns "because of the use of a crash truck during the traffic control setup").

Mr. Magrino testified that, once he moved to the night shift, he was "responsible for being in compliance with DOT for how the traffic pattern was set up and taken down." Ex. D, Magrino Dep. 45:16-18, ECF No. 24-3 at 30.

He also testified that German Ruiz "was supposed to be kind of there to show me and Manny how it actually worked in the field as opposed to the classroom." Ex. D, Magrino Dep. 46:11-15, ECF No. 24-3 at 31.

Mr. Magrino's concerns that night likewise related to the placement of the crash truck and the setup of the traffic pattern while the lane closure was underway. Ex. A, Ruiz Aff. ¶ 14, ECF No. 24-3 at 4 (stating that Bradley Magrino said "he was uncomfortable because of the use of a crash truck during the traffic control setup"); Ex. C, Mustafaj Aff. ¶ 13, ECF No. 24-3 at 14 (stating that Bradley Magrino "discussed the use of the crash truck and the fact that Mr. Ruiz was the one coordinating the set-up of the pattern").

Because Bradley Magrino raised his concern first to German Ruiz while the lane closure was being set up and then to Dori Mustafaj after leaving the highway to meet him in a commuter parking lot, Ex. A, Ruiz Aff. ¶ 14, ECF No. 24-3 at 4 (stating that Bradley Magrino "brought his vehicle to a stop to express his concerns to me" and that Ruiz "referred Plaintiff to his supervisor, Mr. Mustafaj, for further instruction"); Ex. C, Mustafaj Aff. ¶ 12, ECF No. 24-3 at 14 (stating, "I received a telephone call from Plaintiff requesting that I meet with him" and " I agreed to meet with him in commuter parking lot near the I-95 job site."), his statements arguably are "part and parcel of his concerns" about carrying out the traffic-control work he had been assigned to perform. *See Weintraub v. Bd. of Educ.*, 593 F.3d 196, 203 (2d Cir. 2010)(Speech is made under an employee's official duties when it is "part-and-parcel of his concerns" about his ability to "properly execute his duties" and "ultimately [takes] the form of an employee grievance, for which there is no relevant citizen analogue.").

But even crediting all of the record evidence in Mr. Magrino's favor, Ex. A, Ruiz Aff. ¶ 14, ECF No. 24-3 at 4 (stating that Bradley Magrino said "he was uncomfortable because of the use of a crash truck during the traffic control setup"); Ex. C, Mustafaj Aff. ¶ 13, ECF No. 24-3 at 14 (stating that Bradley Magrino "discussed the use of the crash truck and the fact that Mr. Ruiz was the one coordinating the set-up of the pattern"), including his testimony that he told Dori Mustafaj the setup was "totally unsafe" and involved "cars doing 70 miles an hour being funneled into one lane," Ex. D, Magrino Dep. 69:7-18, ECF No. 24-3 at 35, this is an internal workplace disagreement about the use of a crash truck and the manner in which the traffic pattern was being set up on a particular night shift. *See* Ex. C, Mustafaj Aff. ¶ 16, ECF No. 24-3 at 14 (stating that this was "the first instance in which Plaintiff voiced any concerns to me regarding the job site").

9

Mr. Magrino raised his concerns only to on-site Yonkers Contracting personnel. Ex. A, Ruiz Aff. ¶ 14, ECF No. 24-3 at 4 (stating that Ruiz "referred Plaintiff to his supervisor, Mr. Mustafaj, for further instruction"); Ex. C, Mustafaj Aff. ¶ 12, ECF No. 24-3 at 14 (stating that Bradley Magrino requested a meeting and that Mustafaj agreed to meet him near the job site). He also did not report his concerns to the Compliance Hotline, the Independent Monitor, Human Resources, the Chief Compliance Officer, or any external agency. Ex. B, Lloyd Aff. ¶ 15, ECF No. 24-3 at 9 (stating that Bradley Magrino "not only failed to report any complaints to Yonkers Contracting's Compliance Hotline, the Independent Monitor Hotline, Human Resources, or the Chief Compliance Officer, but also did not raise any concerns externally"); Ex. D, Magrino Dep. 32:22-24, ECF No. 24-3 at 22 (testifying, "Q Did you contact anyone at Yonkers with human resources or the chief compliance officer or the compliance liaison at Yonkers? A No.").

Such internal-only complaints about workplace practices and regulatory compliance routinely are not sufficient to create a genuine issue of fact as to public speech protected by § 31-51q. *See, e.g., Weicholz v. Dep't of Mental Health & Addiction Servs.*, No. CV-21-6111109-S, 2022 WL 2678893, at *3 (Conn. Super. Ct. July 11, 2022) (stating that "the plaintiff's concerns with a single patient's medical records at Whiting do not involve a public concern" and "at most, the plaintiff's complaint contains allegations of a reporting policy disagreement with her employer, which is not protected speech under § 31-51q"); *Kottapalli v. ASML US, LP*, No. 3:21-cv-01137 (SVN), 2022 WL 2440174, at *3 (D. Conn. July 5, 2022) (stating that "[s]peech relating to the terms and conditions of an employee's employment, the conditions of the employee's own work environment, and the employee's personal grievances against their employer do not rise to the level of public concern needed to plausibly state a § 31-51q claim"); *Kottapalli*, 2022 WL 2440174, at *5 (stating that the plaintiff's concerns were "clearly personal

10

to him and did not seek to correct a widespread practice"); *Dighello v. Thurston Foods, Inc.*, No. CV-16-6009441-S, 2019 Conn. Super. LEXIS 2854, at *31-32 (Conn. Super. Ct. Nov. 8, 2019) (holding that internal-only comments "do not rise to the level of public speech contemplated or protected by Section 31-51q"); *Beamon v. Yale New Haven Hosp.*, No. 3:16-cv-181 (JBA), 2017 U.S. Dist. LEXIS 36430, at *15 (D. Conn. Mar. 14, 2017) (concluding there was no public concern when the asserted safety issue was "based entirely on one incident that potentially endangered only Plaintiff himself"); *Cole v. Univ. of Bridgeport*, No. CV-15-6048781-S, 2016 WL 4745231, at *6 (Conn. Super. Ct. Aug. 10, 2016) (stating that "[s]peech reflecting 'mere policy differences with the employer ... is not protected' by our state constitution" and that "[t]he plaintiff has not alleged illegal activity, official dishonesty, deliberate unconstitutional acts or other serious wrongdoing or threats to health and safety" and thus "do not constitute matters of public concern")(citations and internal quotation marks omitted); *King v. The Connection, Inc.*, No. CV106015682S, 2011 Conn. Super. LEXIS 1629, at *9 (Conn. Super. Ct. June 20, 2011) (holding that internal workplace disputes regarding practices and procedures are not matters of public concern); *Urashka v. Griffin Hosp.*, 841 F. Supp. 468, 474 (D. Conn. 1994) (agreeing that Conn. Gen. Stat. § 31-51q "protects only speech on issues of 'public concern' and does not extend to wholly private or internal speech relating to a declarant's own terms and conditions of employment").

In the absence of anything else in this record, the undeveloped allegations in Mr. Magrino's Complaint, that Yonkers Contracting was not following the CTDOT traffic control plan on a public project, Compl. ¶¶ 13-16, Notice of Removal Ex. A, ECF No. 1-1 at 5 (alleging that Yonkers Contracting instructed Bradley Magrino to place barriers "in a manner that was not in conformance with the CTDOT traffic control plan" and that Bradley Magrino told the

superintendent that Yonkers Contracting "was not following the CTDOT traffic control plan"), do not create a genuine issue of material fact as to Mr. Magrino's statements showing a private, job-related grievance, rather than speech on a matter of public concern, or something rising to the level of official dishonesty, deliberate unconstitutional action, or other serious wrongdoing. *See Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (requiring the "opposing party [to] come forward with specific evidence demonstrating the existence of a genuine dispute of material fact. More specifically, it must do more than simply show that there is some metaphysical doubt as to the material facts.")(citations and internal quotation marks omitted)

Accordingly, Yonkers Contracting's motion for summary judgment will be granted on those grounds.

**B. The Material Interference with the Workplace Analysis**

Even if Mr. Magrino's claim had survived the protected speech in the workplace analysis above – which it did not – Section 31-51q protects speech only if it does not substantially or materially interfere with job performance or the employment relationship. Conn. Gen. Stat. § 31-51q (providing that protected activity is actionable only where it "does not substantially or materially interfere with the employee's bona fide job performance or the working relationship between the employee and the employer").

In assessing that requirement, Connecticut courts consider "the extent of the disruption caused by the employee's speech on [1] workplace discipline, [2] harmony among co-workers, [3] working relationships, [4] the employee's job performance, [5] the responsibilities of the employee within the agency and [6] whether the speech is made publicly or privately." *Schumann*, 304 Conn. at 623-24.

Yonkers Contracting argues that Mr. Magrino's conduct materially interfered with the working relationship. Def.'s Mem. in Supp., ECF No. 24-1, at 14-15 (arguing that his speech "substantially interfered with his relationship with Defendant").

The Court agrees.

Even if Mr. Magrino could have established that his speech was protected, on this record, his conduct substantially and materially interfered with the working relationship. Mr. Magrino left the job site, leaving the crew short-staffed on I-95. Ex. A, Ruiz Aff. ¶ 15, ECF No. 24-3 at 4 (stating that Bradley Magrino "left the job site with his colleague, leaving his team short staffed on I-95"); Ex. D, Magrino Dep. 71:7-12, ECF No. 24-3 at 37 (testifying that the team was short-staffed, and that there was a safety concern with the team being short-staffed). Michael Lloyd then advised the union representative that Mr. Magrino had left the team short-staffed and "put their safety in jeopardy." Ex. B, Lloyd Aff. ¶ 13, ECF No. 24-3 at 9 (stating that Bradley Magrino "left his team short-staffed and put their safety in jeopardy").

While there are circumstances where complaints have only "some impact on his relationship with his supervisors" and where "any such impact was not sufficient to push his speech outside of the ambit of section 31-51q," *Karagozian v. Luxottica Retail N. Am.*, 147 F. Supp. 3d 23, 38 (D. Conn. 2015), on this record, there is operational disruption and an admitted safety consequence as a result of Mr. Magrino's actions. Such speech falls outside constitutional protection when it is "extraordinarily disruptive to [the employee's] employment," "greatly interfere[s] with the plaintiff's job performance," "place[s] considerable strain" on working relationships, or "stoke[s] division within the defendant's workforce." *Schumann*, 304 Conn. at 624-25. And Mr. Magrino has not pointed to any record evidence from which a reasonable factfinder could conclude otherwise. *See Cotto v. United Techs. Corp.*, 48 Conn. App. 618, 625

13

n.10 (1998) (rejecting the claim because the plaintiff's "actions and expressions of opinion did interfere with his relationship with his employer"); *Cotto*, 251 Conn. at 13 (stating that protected activity is activity that in "no way [has] to do with job performance, or on the job [occurrences], or interfer[ence] with . . . employment").

Accordingly, Yonkers Contracting's motion for summary judgment would have been granted on those grounds as well

## IV. CONCLUSION

For the foregoing reasons, Yonkers Contracting Company, Inc.'s motion for summary judgment as to Bradley Magrino's claim under Conn. Gen. Stat. § 31-51q is **GRANTED**.

The Clerk of Court is respectfully directed to enter judgment in favor of Yonkers Contracting Company, Inc. and to close this case.

**SO ORDERED** at New Haven, Connecticut, this 28th day of March, 2026.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE